B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Karen True and Richard True | Bank of Canton |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Haneen Kutub & Avi Liss<br>Liss Law, LLC<br>251 Harvard St. Suit 7<br>Brookline, MA 02446  P#: (617) 505-6919 | Douglas K. Clarke<br>Riemer & Braunstein LLP<br>3 Center Plaza<br>Boston, MA 02108   P#: (617) 523-9000 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Breach of Contract, breach of implied Covenant of good faith and fair dealing, negligence, and, violation of Massachusetts Consumer Protection Act pursuant to M.G.L. c. 93A.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 1,042,100.00 |

Other Relief Sought  Discharge of Debtors obligations to Creditor and litigation Costs and reasonable attorney fees in connection with this action.

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR  Karen True and Richard True | BANKRUPTCY CASE NO.  11-10242 | |
| DISTRICT IN WHICH CASE IS PENDING  Massachusetts | DIVISION OFFICE  Eastern Division | NAME OF JUDGE  Hillman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

KAREN TRUE AND RICHARD TRUE,
Debtors

KAREN AND RICHARD TRUE,

Plaintiff

v.

BANK OF CANTON,

Defendant

Chapter 11
Case #: 11-10242 WCH

Adv. Pro. No. _____

## COMPLAINT AND PRAYER FOR RELIEF IN ADVERSARY PROCEEDING

### Facts alleged as to All Counts

Plaintiffs, Karen True and Richard True, through their attorney of record, Haneen Kutub, state as follows:

### I.    PARTIES AND JURISDICTION

**A. Parties**

1. Plaintiffs, Karen True and Richard True, are Chapter 11 Debtors in a case docketed with the Court as 11-10242. The Debtors are individuals with a mailing address of 49 Lee St. Brookline, Massachusetts 02445.

2. Plaintiffs filed a Chapter 11 bankruptcy petition on January 11th, 2011.

3. Defendant is a corporation and may be served at 490 Turnpike St., Canton, MA 02021.

1

4. Defendant is a creditor in this bankruptcy proceeding

### B. Jurisdiction

5. This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. § 1334.

6. This matter is a core proceeding, as that term is defined by 28 U.S.C. §157(b).

7. Pursuant to 28 U.S.C §1409, venue is appropriate in the District of Massachusetts.

## II.    FACTS GIVING RISE TO PLAINTIFS' CLAIM

### C. The Contract

8. On or about April 8th, 2005 Plaintiffs signed a Construction Loan Agreement ("The Contract") with the Defendant for the purpose of constructing a dwelling at 49 Lee St. Brookline, MA ("The Project").(See Exhibit A p.1)

9. At the time the Plaintiffs signed the contract with the Defendant they were residents of Palm Beach Florida, and were living in The State of Florida.

10. The Plaintiffs chose the Defendant as their lender for this particular project based upon the Defendants alleged knowledge and expertise of construction loans and construction lending in Massachusetts, as is evident by their primary construction loan page of their website. (See Exhibit B).

11. Pursuant to the contract terms, the original loan amount was for $1,687,400.00 of which $899,900.00 was to be available for the construction project.

12. During the course of the contract negotiations the Plaintiffs expressed concern over being unable to oversee important aspects of the project from their relative distance in Florida.

2

13. The Defendant made representations to the Plaintiffs that their Construction Inspector, Mr. McCarthy, would visit the project monthly to ensure compliance with project plans and local building rules and regulations.

14. Additionally, the Defendant requested and mandated that all disbursements of funds would be made by them and only them, upon receipt of a draw request from the Plaintiff.

15. According to the terms of the contract, advances for Draw Requests would not be made without confirmation that all work done on the project was done in a good and workmanlike manner and without defects, as confirmed by the report of the Construction Inspector, Mr. McCarthy.

### D. The Project

16. The project site is set on an incline and not a flat surface, therefore a major part of the plan specifications, and requirements established in advance by the Town of Brookline's Building Department, called for the construction of a stone retaining wall twelve feet in height and 300 feet in length to surround the property.

17. The purpose of the wall was not aesthetic, but rather to hold back thousands of pounds of silt and earth from cascading onto the property during inclement weather.

18. The project plans called for the wall to be built prior to the actual dwelling as the geography of the site made it almost impossible to construct the wall after the dwelling went up.

19. Therefore, the structural integrity of the retaining wall was imperative to the success of the entire project.

20. The original project plans as drafted by the Plaintiffs' architect and design team were approved by the Town of Brookline and met all the necessary requirements of Massachusetts building regulations and standards.

21. Construction of the project began June 2005 and lasted through December 2006.

22. Throughout the construction period Mr. McCarthy visited the site on a regular basis and issued construction reports to the Defendant.

23. All Draw Requests were approved by Mr. McCarthy and subsequently the Defendant, for the project.

### E. The Defects

24. After the final Draw Request for the project was released by the Defendant, Plaintiffs discovered that only a temporary Certificate of Occupancy ("CO") had been issued by the Town of Brookline for the dwelling.

25. Pursuant to Massachusetts Buildings Regulation 780 CMR 120.0 "A building or structure hereinafter shall not be used or occupied in whole or in part until the certificate of use and occupancy shall have been issued by the building commissioner or inspector of building or, when applicable the state inspector."

26. While temporary COs allow holders of permits to temporarily reside in the residence while any necessary work is being completed, this permission is terminated within 30 days after completion of any work unless a valid CO is issued by a building official.

27. In a letter dated May 28th, 2009 to the contractor Jeff Birnbaum, the Local Inspector for the Town of Brookline, a Mr. Frank M. DeAngelis conducted a final inspection of the property and listed several defects existing in the exterior and

4

interior of the residence, among these defects were defects with the retaining wall. (See Exhibit C).

28. On July 7th, 2009 Michael Shepard, the building commissioner for the Town of Brookline sent a letter to the Plaintiffs informing them that final occupancy of the residence could not occur until all the requirements of the building code 780 CMR were satisfied.

29. In a further letter dated July 23rd, 2009 Mr. Shepard detailed specific code violations relating to the defects observed by the Local Inspector during his inspection on May 28th, 2009. (See Exhibit D).

30. Among the numerous code violations mentioned in Mr. Shepard's letter was an assertion that no inspections for any part of the retaining wall construction were either requested or done.

31. In addition to the formal letters provided by the Town of Brookline, visual observation of the retaining wall during heavy rainfall show water seeping through the wall, evidencing that not only is the wall far from structurally sound, but potentially very dangerous to anyone standing within its vicinity.

**F. The Value of the Property**

32. Prior to learning of the serious structural defects inherent in the construction, the Plaintiffs had the home appraised at approximately $2,695,000.00 dollars and had an offer from potential buyers for the property.

33. Had the project been successful, the sale would have been completed and all parties involved in the transaction, including the Defendants would have been satisfied.

34. Upon learning from the Inspectors that the retaining wall had never been inspected and was clearly defective and must be completely torn down, the Plaintiffs sought an appraisal for the cost of such repairs.

35. The estimate provided by an independent engineer for the cost of rebuilding the wall was estimated at $742,100.00 due to the complexity of tearing down and rebuilding the structure around the dwelling that is already in place. (See Exhibit E).

36. In its current condition, the value of the property is severely diminished as good title cannot be transferred without a valid certificate of occupancy.

### III.    COUNT 1: BREACH OF CONTRACT

37. The contract singed by the Plaintiffs and the Defendant specifically states that the Defendant would not make any advances on any work that was not completed "…in a good and workmanlike manner and without defects". (See Exhibit A p.4 ¶ 2.4)

38. Pursuant to the terms of the signed agreement the Defendant voluntarily assumed the responsibility of insuring that loan funds would not be advanced on defective construction.

39. By its own definition, a determination of whether or not work has been done in a workmanlike manner and/or without defects cannot be made without requiring that the work be inspected.

40. The Defendant failed to verify whether or not project work had been completed according to approved plans and local building codes and regulations, as would

have been verified by a report from a building inspector for the Town of Brookline had inspections ever been done.

41. The Defendant breached its contract with the Plaintiffs by advancing loan funds on several aspects of the project that not only were never inspected or but that were clearly defective upon completion.

42. As a result of the Defendant's failure to meet its obligations under the contract the Plaintiffs have suffered damages in the form of an unmarketable dwelling and an excessive amount of debt associated with the failed project.

### IV. COUNT 2: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

43. The Defendant is a seasoned professional with a purported 175 years of construction lending experience. The plaintiffs signed a contract with the Defendant with the expectation that upon completion of the project and the final disbursement made, a certificate of occupancy would be provided.

44. The Defendant knew that the Plaintiffs would be overseeing the project from a distance and were relying upon the "Qualify of Work" provision of the contract to ensure successful completion of the project work according to approved plans and in compliance with local building code rules and regulations.

45. Because the contract gave the Defendant discretion to approve draw requests, although the Plaintiffs were not made privy to the information contained in the Reports created by Mr. McCarthy and issued to the Defendant, they were led to believe, and reasonably relied, that they contained verification that the project

work was completed correctly, otherwise the advanced would not have been approved.

46. The Defendant's failure to take any action to verify that work completed on the project, specifically the retaining wall, was performed according to plan, or even inspected by a local official to ensure safety and code compliance was a breach of their duty to act in good faith with respect to the terms of the contract.

47. Mr. McCarthy as the Defendant's agent, clearly made misrepresentations to the Plaintiffs each time a Draw Request was made when he assured the Plaintiffs the project was progressing according to plans.

## V.     COUNT 3: NEGLIGENCE

48. Pursuant to the terms of the contract, the Defendant gave itself exclusive authority to approve Draw Requests for the project after review of a report by its own inspector verifying that the work was completed without defects.

49. By doing so, the Defendant created a fiduciary relationship between itself and the Plaintiffs by assuming the responsibility to inspect the work completed before issuing the funds.

50. Therefore, the Defendant had an implied duty to exercise reasonable care with respect to the disbursement of the funds the Plaintiffs contracted for.

51. By failing to exercise due care with respect to the disbursement of funds, the Defendant was a proximate cause of the project's failure, and as a result the harm suffered by the Plaintiffs.

## VI. COUNT 4: CHAPTER 93A CLAIM FOR UNFAIR AND DECEPTIVE ACTS AND PRACTICES

52. The Defendant's misrepresentations to the Plaintiffs and negligent disbursement of project funds constituted an unfair and deceptive act or practice under M.G.L. Ch. 93A.

53. The Plaintiffs relied upon the information provided by the Defendant's agent Mr. McCarthy when making the Draw Requests needed for the project.

54. The Defendant acted in clear disregard for the interests of the Plaintiffs and the success of the underlying contract by allowing construction to continue without verifying that it was inspected, and by continuing to release funds on defective work.

55. The Defendant unfairly led the Plaintiffs to believe it was overseeing work to ensure the success of the project, when in fact the Defendant had no intention of overseeing qualify of work because it knew it would have recourse to foreclose on the property to protect its own interest, regardless of whether or not the project was successful.

56. The Defendant's failure to uphold its self imposed responsibilities under the contract and its blatant misrepresentations of fact to the Plaintiffs with respect to project work have resulted in massive financial damages to the Plaintiffs.

9

## VII. PRAYER FOR RELIEF

The Plaintiffs, Richard and Karen True, respectfully request that this Honorable Court grant them the following relief

1. Damages in the amount of $742,100.00 which is equivalent to the amount it will cost them to repair the damage to their property.

2. Damages in the amount of $300,000.00 which is equivalent to the profits they expected to gain had they been able to sell the property to the interested buyers at the time of completion of the project.

3. A discharge of all debts owed by the Plaintiffs to the Defendants in connection with the project.

4. Litigation costs and reasonable attorney's fees in connection with this action.

5. All such other relief as this Court deems just and proper.

Respectfully Submitted,
RICHARD C. TRUE AND KAREN M. TRUE,
By their Attorneys,

/s/ Haneen Kutub
Haneen Kutub, Esq. BBO# 669735
Avi Liss, Esq. BBO# 671281
251 Harvard St. Suite 1
Brookline, MA 02109
(617) 505-6919

10